QUESTION:
May the Legislature, by special act, divide the lands within the Ranger Drainage District (organized under the general drainage district law) into two units or zones and apportion assessments imposed on such lands according to special benefits received from improvements or special benefits bestowed?
SUMMARY:
In the absence of any constitutional provision, expressly or by necessary implication prohibiting the exercise of the lawmaking power of the state, the Legislature may enact a special act dividing the lands within a drainage district organized under the general drainage district law (Ch. 298, F. S.) into two units or zones and apportioning assessments imposed on such lands according to the improvements made or special benefits bestowed.
Your question is answered in the affirmative, subject to compliance with constitutional requirements relating to the enactment of special laws.
I would first note that the procedure provided in Ch. 298, F. S., for forming drainage districts (under which the circuit court must issue a decree upon finding that the statutory requirements have been satisfied) may no longer be used to create such districts, even though such provisions of Ch. 298 remain on the statute books. In AGO 075-108, I expressed my opinion that Ch. 165, F. S. (as enacted by Ch. 74-192, Laws of Florida), operates to supersede conflicting provisions of general or special law regarding the methods of creation of special districts for drainage and water management purposes. The crucial language appears in s. 165.022, providing:
 It is further the purpose of this act to provide viable and useable general law standards and procedures for forming and dissolving municipalities and special districts in lieu of any procedure or standards now provided by general or special law. The provisions of this act shall be the exclusive procedure pursuant to general law for forming or dissolving municipalities and special districts in this state except in those counties operating under a home rule charter which provides for an exclusive method as specifically authorized by s. 6(e), Art. VIII of the State Constitution. Any provisions of a general or special law existing on July 1, 1974 in conflict with the provisions of this act shall not be effective to the extent of such conflict. (Emphasis supplied.)
Also see s. 163.603, F. S. (1976 Supp.), relating to new community districts under part V of Ch. 163, F. S., excepting independent special districts established pursuant to Ch. 298 from the operation of part V of Ch. 163, but requiring all independent special districts (other than those excepted therein) created by ordinance or by a court or state agency order to be established pursuant to part V of Ch. 163 and in accordance with Ch. 165, F. S.
It is further clear, under general principles of legislative power and under ss. 165.041(2) and 165.051(1)(a), F. S., that the Legislature may, by special act, create and abolish special districts. If the power to create and abolish is established, the power to amend or alter such a district can reasonably be inferred. The power of the Legislature to alter the structure of a drainage district organized under the general drainage district law was recognized by the Florida Supreme Court in Ronald v. Ryan,26 So.2d 339 (Fla. 1946). That decision upheld Ch. 22968, 1945, Laws of Florida, which dissolved and abolished the Board of Supervisors of the Halifax Drainage District and established the Board of County Commissioners of Volusia County as the ex officio board of supervisors of the district with all duties and obligations devolving upon such board of supervisors under the statutes theretofore enacted. Sections 1 and 2, Ch. 22968. The applied the rule that, for a statute to be held unconstitutional, it must be shown to be contrary to express or necessarily implied prohibitions found in the State or Federal Constitution. The court held that the petition for declaratory judgment in that case entirely failed to meet this rule and affirmed the declaratory decree entered by the trial court holding Ch. 22968 valid. It is fundamental that the Legislature may exercise any lawmaking power not forbidden by organic law. Hopkins v. Special Road Bridge Dist. No. 4, 74 So. 310 (Fla. 1917); Savage v. Board of Public Instruction, 133 So. 341 (Fla. 1931). The Halifax Drainage District and its board of supervisors and other officers were thereafter abolished by another act of the Legislature, Ch. 30235, 1955, Laws of Florida.
I have found no case involving the Legislature's division into zones or units of a drainage district created under Ch. 298 F. S. (or its earlier equivalents). However, in Bannerman v. Catts,85 So. 336 (Fla. 1920), the court upheld a special act of the Legislature dividing the Everglades Drainage District (originally created by special act) into zones and proportioning the assessments accordingly, in much the same manner as is being contemplated in regard to the Ranger Drainage District. Also see
Lainhart v. Catts, 75 So. 47 (Fla. 1917), involving the same issues.
In AGO 077-20, I concluded that it would be within the power of the Legislature to abolish by special act a regional rapid transit authority which had been formed, not by special act, but by mutual action of three counties pursuant to authority provided by general law (part IV of Ch. 163, F. S.). That conclusion was based, as was Ronald v. Ryan, supra, on the principle that the Legislature can pass any act which legislative wisdom dictates, so long as it does not collide with any provision of the State or Federal Constitution. As I stated in AGO 077-20, in the absence of any such conflict, `the exercise of reasonable legislative discretion is the sole brake on the enactment of legislation, for State Constitutions are limitations on, rather than grants of, power and the Legislature is therefore authorized to do those things not forbidden by the State or Federal Constitutions.' This principle was simply and directly stated in State v. Davis, 166 So. 289, 297
(Fla. 1936): `The test of legislative power is constitutional restriction; what the people have not said in their organic law their representatives shall not do, they may do.' Accord: State v. Board of Public instruction for Dade County, 170 So. 602 (Fla. 1936); Farragut v. City of Tampa, 22 So.2d 645 (Fla. 1945); Sun Insurance Office, Limited v. Clay, 133 So.2d 735 (Fla. 1961).
I am unaware of any constitutional provision which expressly or by necessary implication operates to prohibit the Legislature from enacting into law a bill such as the one here in question. Based on this absence of constitutional prohibitions, and on the decisions cited above, recognizing the power of the Legislature to alter the structure of drainage districts (both those created by special act and those created pursuant to general law) and to divide lands in a district upon which a charge is to be imposed into different classes of zones, for the purpose of apportioning such charges, I am of the opinion that the division of the lands within the Ranger Drainage District into two units and the apportioning of the assessments in each unit according to the special benefits bestowed may validly be effected by special act of the Legislature. (It is assumed, of course, that the provisions of s. 10, Art. III, State Const., as to enactment of special acts — requiring publication of notice of intent to seek enactment of special legislation, or a referendum of the electors within the affected area — will be complied with.)
Prepared by: Jerald S. Price Assistant Attorney General